

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 13, 1957

Hon. J. M. Falkner, Commissioner
State Department of Banking
Capital National Bank Building
Austin, Texas

Opinion No. WW-44

Re: Whether Secretary of State has
the authority to approve a
Charter amendment which
changes the purpose clause of
a corporation chartered under
Article 1303b, Vernon's Civil
Statutes, to do a general fiduc-
iary and depository business
under the provisions of Article
7.01, Texas Insurance Code,

Dear Mr. Falkner:

and related questions.

     Your letter requesting our opinion relative to the captioned
matter, consists of five questions, together with the factual situation
involved. Since the factual situation outlined in your request is set
out in great detail, it would unduly lengthen this opinion to quote the
request in full. Therefore, only those facts will be restated which are
deemed necessary as a basis for our answers to the questions propound-
ed.

     A corporation was chartered by the Secretary of State in
May, 1947, with a purpose clause to do business for the purposes con-
tained in Article 1303b, Vernon's Civil Statutes of Texas (Acts 1927,
40th Leg., Ch. 275, p. 414). The purpose clause is as follows:

     "A private corporation may be formed for any one
or more of the following purposes, without banking or
insurance privileges:* to accumulate and loan money; to
sell and deal in notes, bonds and securities; to act as
Trustee under any lawful express trust committed to it
by contract or will, or under appointment of any court
having jurisdiction of the subject matter, and as agent
for the performance of any lawful act; to subscribe for,
purchase, invest in, hold, own, assign, pledge and other-
wise deal in and dispose of shares of capital stocks,
bonds, mortgages, debentures, notes and other securities
or obligations, contracts and evidences of indebtedness
of foreign or domestic corporations not competing with

---

    * Emphases throughout are supplied.

each other in the same line of business; to borrow money or issue debentures for carrying out any or all purposes above enumerated. Provided that the power and authority herein conferred shall in no way affect any of the provisions of the anti-trust laws of this State."

On September 14, 1954, the corporation filed a proposed charter amendment with the Secretary of State: (1) to change the purpose clause of the corporation, (2) to change the name of the corporation, and (3) to increase the capital stock to the sum of $500,000.00. The amendment proposed to change the purpose clause of the corporation from the purposes set forth above to the following:

"The purposes for which it is formed is to do a general fiduciary and depository business, together with all other powers claimed under Chapter 7, Article 7.01 through 7.18, inclusive, Insurance Code, 1951, V.A.T.S., and complying with Article 1513, V.A.T.S., 1925."

It is noted that the emphasized portion of the proposed change of the purpose clause is contained in the purpose clause authorized by Article 7.01, Texas Insurance Code, which, prior to the adoption of the Insurance Code, was Article 4969 of Chapter 16, Title 78, Revised Civil Statutes of Texas, 1925. This Article was repealed by Section 4 of the Texas Insurance Code of 1951, approved June 28, 1951. The pertinent part of Article 7.01 of the Insurance Code is as follows:

"Private corporations may be created to act as trustee, assignee, executor, administrator, guardian and receiver, when designated by any person, corporation or court to do so; to do a general fiduciary and depository business; to act as surety and guarantor of the fidelity of employees, trustees, executors, administrators, guardians or others appointed to, or assuming the performance of any trust, public or private, under appointment of any court or tribunal, or under contract between private individuals or corporations; also upon any bond or bonds that may be required to be filed in any judiciary proceedings; also to guarantee any contract or undertaking between individuals, or between private corporations, or between individuals or private corporations and the State and municipal corporations or counties or between corporations and individuals; to act as executor and testamentary guardian when designated by such decedents; or to act as administrator or guardian when appointed by any court having jurisdiction; also on any bond or bonds that may be required of any State official, district official, county official or official

of any school district or of any municipality,
provided that the commissioners courts of each
county shall have the right to reject any or all
official bonds made by surety companies and in
their discretion may require any or all officials
to make their official bonds by personal sureties.
. . ."

At the time the proposed charter amendment was
submitted to the Secretary of State for approval, Article 1314,
Revised Civil Statutes of Texas, 1925, as amended by the Acts of
1951, 52nd Legislature, Ch. 166, Sec. 1, p. 284, read as follows:

"Any private corporation organized or incor-
porated for any purpose mentioned in this title,
may amend or change its charter or act of incor-
poration by filing, authenticated in the same manner
as the original charter, such amendments or changes
with the Secretary of State. A corporation created
by special Act of the Legislature shall also file with
said officer its original charter and such amendments
thereto or changes therein, if any, as have been made
by special Act of the Legislature; and the same shall
be recorded by the Secretary of State, followed by the
proposed amendments or changes thereof. Such
amendments or changes shall take effect and be in
force from the date of the filing thereof. The certifi-
cate of the Secretary of State shall be evidence of such
filing. Any private corporation organized for any
purpose mentioned in this title may change to another
purpose mentioned in this title, by a vote of eighty
(80%) per cent of the outstanding voting stock at a
meeting called for that purpose; provided no amend-
ment or change violative of the Constitution or laws
of this State or any provision of this title shall be
of any force or effect. . . ."

A thorough search of the purpose clauses authorized to
be adopted in the charters of private corporations contained in Title
32 of the Revised Civil Statutes of Texas , 1925, as amended, fails
to disclose any purpose clause which would authorize corporations
to be formed to do "a general fiduciary and depository business."

Under the above stated facts you have requested an
answer to the following questions:

"Question 1. In view of the above factual situation
would the approval and filing by the Secretary of State
of the above amendment constitute a legal change of the
purpose clause of the corporation or is the amendment

void and 'of no force or effect'?  If the
amendment was void and of no force or effect
then is the corporation still a valid corporation
with the original purposes set out in the original
charter?"

In answer to the first question, propounded in "Question
1", it is the opinion of this office that the approval and filing by the
Secretary of State of the proposed charter amendment on September
14, 1954, was void as a matter of law and "of no force or effect."
The provisions of Article 1314, R.C.S., 1925, as amended, are clear
and unambiguous, and permit only the amendment of the purpose
clause of a corporation originally chartered for one of the purposes
set forth in Title 32, R.C.S., 1925, as amended to another purpose
mentioned or set forth in Title 32.  Since the purpose clause contained
in the proposed amendment was not mentioned in Title 32 at the
time the Revised Civil Statutes, 1925, was adopted by the Legislature
of the State of Texas, or added thereto by amendment. after that
date, the proposed charter amendment does not meet the specific
requirement of the provisions of Article 1314, as amended in 1951.
Further, the purpose clause "To do a general fiduciary and depository
business" stated a purpose which was contained originally in Article
4769, Chapter 16, Title 78, Revised Civil Statutes of Texas, 1925, as
amended, until it was repealed by the enactment of the Texas Insur-
ance Code, 1951, by Acts 52nd Leg. Ch. 491, p. 868, and reenacted
in the Insurance Code of 1951 as Article 7.01.  Neither of these
Articles was mentioned in or formed a part of Title 32, Revised Civil
Statutes, 1925, as amended, at the time of the approval of the
proposed charter amendment.  In addition, the provision of Article
1314, as amended in 1951, which states that "no amendment or
change violative of the Constitution or Laws of this State or any
provision of this title shall be of any force or effect", is applicable
and therefore the proposed amendment which purports to change the
purpose clause of the corporation is without "any force or effect",

In answer to your second question propounded in "Question
1", since the amendment was void and of no force and effect, the
corporation would still remain a valid corporation with the original
purpose clause set out in the original charter, since it is elementary
that an attempted invalid amendment to a charter does not render the
original charter invalid.  See Staacke v. Routledge, (Civ.App. San
Antonio, 1915) 175 S.W. 444, 447.

After the Secretary of State had approved the void charter
amendment the corporation applied for and received from the Board
of Insurance Commissioners a certificate of authority to engage in
business for the purposes authorized by Article 7.01, Texas Insurance
Code, among which was the authority to do a trust business as
authorized under Chapter 7, Insurance Code of Texas, 1951.  Presum-
ably acting under the certificate of authority and under the provisions

of Article 1513, Revised Civil Statutes, 1925, which gave additional powers to any "trust company organized under the laws of the State of Texas with a capital of not less than $500,000.00" to issue debenture bonds and promissory notes, the corporation proceeded to issue, offer for sale, and sell what were denominated five year 5% and $5\frac{1}{2}$% debenture bonds, two year 5% debenture bonds, and "certificates of trust", payable on demand, with interest at the rate of $4\frac{1}{2}$% payable semi-annually, but with cumulative interest payable to date upon demand.

Since Question No. 2 is based upon the premise that the charter amendment filed with the Secretary of State was valid, it is not deemed necessary to state or answer this question in view of our answer to Question No. 1. However, in Question No. 3, you have asked whether the issuance or sale of the evidences of indebtedness were authorized under the original charter of the corporation (Article 1303b) and, if so, are such "debenture bonds" and "certificates of trust" subject to collateralization by the company under the provisions of Article 1524a, Vernon's Civil Statutes.

Section 1 of Article 1524a, provides in part as follows:

"This Act shall embrace corporations heretofore created and hereafter created having for their purpose or purposes any or all of the powers now authorized in Subdivisions 48, 49 or 50 of Article 1302, Revised Civil Statutes of Texas, 1925, and heretofore or hereafter created having in whole or in part any purpose or purposes now authorized in Chapter 275, Senate Bill Number 232 of the General and Special Laws of the Regular Session of the 40th Legislature. . . ."

Chapter 275 of Senate Bill 232 of the General and Special Laws of the Regular Session of the 40th Legislature contains the purposes now authorized and enumerated in Article 1303b, V.C.S., above set forth.

Section 7 of Article 1524a, V.C.S., reads in part as follows:

"All bonds, notes, certificates, debentures, or other obligations sold in Texas by any corporation affected by a provision of this Act shall be secured by securities of the reasonable market value, equaling at least at all times the face value of such bonds, notes, certificates, debentures, or other obligations. . . . Said securities shall be placed in the hands of a corporation having trust powers approved by the Banking Commissioner of Texas as Trustee under a

trust agreement, the terms of which shall be
approved in writing by the Banking Commissioner
of Texas, . . ."

Since the corporation in question was chartered originally
for the purposes authorized in Article 1303b, the proposed charter
amendment thereto being void at the time the so-called "debenture
bonds" and "certificates of trust" were issued, offered for sale and
sold in Texas, the corporation was then and is now subject to the
provisions of Article 1524a, V.C.S., under Section 1 thereof above
quoted. Therefore the "debenture bonds" and "certificates of trust"
so issued, offered for sale, and sold are subject to and should be
collateralized under the provisions of Section 7, Article 1524a, V.C.S.

Your Question No. 4 is predicated upon the assumption
that the debenture bonds and trust certificates were issued by the
corporation while acting under the certificate of authority issued by
the Board of Insurance Commissioners. Since the proposed charter
amendment was void and of no force and effect the certificate of
authority issued by the Board of Insurance Commissioners could not
purport to authorize the issuance or sale of these securities under
the Insurance Securities Act, and therefore it is unnecessary to
state or answer Question No. 4.

You have advised that the demand "certificates of trust"
referred to above are advertised through the mail as being a savings
plan paying $4\frac{1}{2}\%$ from the date of purchase, which can be converted
into cash plus $4\frac{1}{2}\%$ earned interest to date at any time by the holder
thereof. These certificates are issued on accounts made with the
company as a depositor and statement is further made that the
certificates of trust currently earn $4\frac{1}{2}\%$ interest from date of purchase
to date of withdrawal. The prospectus further states that the dividend
dates of payment of the $4\frac{1}{2}\%$ interest are twice annually, on June 30
and December 31.

"Qestion 5. Does the issuance of the so-called demand
certificates of trust violate the provisions of the Banking Code of
1943, particularly Article 342-301(f), Article 342-707, and Article
342-708? If the provisions of the Banking Code are not violated by
the issuance of these certificates, would the company have the power
to issue and sell these demand certificates of trust under the provisions
of Article 1303b or Chapter 7 of the Insurance Code?"

It is specifically stated in Article 1303b, Vernon's Civil
Statutes, that "a private corporation may be formed for any one or
more of the following purposes, without banking or insurance privileges."
Article 342-301 of the Banking Code of 1943 provides that a State
bank may be incorporated with, among others, the following powers:
"(f) To receive savings deposits with or without the payment of interest"
and (g) to receive time deposits with or without the payment of interest."

From the factual situation above stated, the "certificate of trust" would seem to have all of the qualifications of a savings deposit, payable on demand at an agreed rate of interest. The use of the words "savings plan", "deposit", and "dividend dates of payment" of the semi-annual interest in the prospectus are indicative of the solicitation by the corporation of savings accounts in its capacity as a trust company. The offering of these "certificates of trust" by the corporation to the general public in this connection would therefore be in violation of Article 342-902 of the Banking Code of 1943 which states in part that:

"It shall be unlawful for any . . . corporation . . . to conduct (1) a banking or trust business or to hold out to the public that it is conducting a banking or trust business; . . . Provided, however, that this article shall not apply to (1) national banks, (2) state banks, (3) other corporations heretofore or hereafter organized under the laws of this State. . . to the extent that such corporations are authorized under their charters or the laws of this State. . . to conduct such business. . ."

Inasmuch as Article 1303b does not confer any "banking or insurance privileges" upon a corporation formed thereunder, the corporation would be without authority to solicit or receive deposits with the payment of interest.

The Charter amendment, as to the change in name, and the increase of its capital stock is valid. The corporation , having increased its capital stock to $500,000.00 by virtue of the charter amendment, is thereby automatically entitled to exercise the additional powers specified in Article 1513, R.C.S., 1925. It is the opinion of this office that the offering for sale or selling of the "certificates of trust" would not be permitted unless the "certificates of trust" should be considered to be debentures, bonds, or promissory notes. In our opinion the "certificates of trust" as offered to the public, are neither debentures, bonds, or promissory notes, although they are "other obligations" of the corporation which should and must be collateralized under the provisions of Section 7, Article 1524a, Vernon's Civil Statutes.

### SUMMARY

The Secretary of State is without legal authority or power to approve a charter amendment which changes the purpose clause of a corporation originally chartered under Article 1303b, V.C.S., to do a general fiduciary and depository business under the provisions of Article 7.01, Texas Insurance Code, such amendment being of no force and

effect under the provisions of Article, 1314, V.C.S. Direct obligations such as debenture bonds and certificates of trust issued by the corporation are subject to collateralization under the provisions of Sections 1 and 7, Article 1524a, V.C.S. "Certificates of trust" which are issued and sold to the public as being savings plans earning $4\frac{1}{2}\%$ semi-annual dividends, payable on demand by the depository, are violative of the provisions of Articles 342-301 and 342-902 of the Texas Banking Code of 1943, but must be collateralized under the provisions of Sections 1 and 7 of Article 1524a, V.C.S.

Yours very truly,

WILL WILSON
Attorney General

By *W. V. Geppert*

W. V. Geppert
Assistant

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman

WVG:cs